*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
              *Plaintiff-Appellant,*

          *v.*

MICHAEL D. CAMISCIONE,
              *Defendant-Appellee.*

No. 08-4294

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 04-00594-001—Ann Aldrich, District Judge.

Argued: December 1, 2009

Decided and Filed: January 13, 2010

Before: GUY, ROGERS, and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant. Anthony J. Vegh, Cleveland, Ohio, for Appellee. **ON BRIEF:** Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant. Anthony J. Vegh, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

        GRIFFIN, Circuit Judge. Defendant Michael D. Camiscione pleaded guilty to a one-count information charging him with possession of child pornography, in violation of 18 U.S.C. § 2252 (a)(4) and (b)(2). Although the Sentencing Guidelines recommended a sentencing range of 27 to 33 months of imprisonment, the district court sentenced Camiscione to the custody of the United States Marshal's Service for the remainder of the day, followed by three years of supervised release and 180 hours of community service. After the government appealed Camiscione's sentence to this court, we held that

1

Camiscione's sentence was procedurally reasonable but substantively unreasonable because the district court failed to explain adequately how its sentence "deterred Camiscione from committing future crimes, *see* [18 U.S.C.] § 3553(a)(2)(B); protected the public from further crimes, *see* [18 U.S.C.] § 3553(a)(2)(C); and . . . avoided sentencing disparities, *see* [18 U.S.C.] § 3553(a)(6)." *United States v. Camiscione*, 207 F. App'x 631, 637 (6th Cir. 2006) (unpublished) ("*Camiscione I*"). Accordingly, we vacated Camiscione's sentence and remanded to the district court for resentencing.

On remand, and more than a year-and-a-half after our mandate in *Camiscione I* issued, the district court reimposed its original sentence upon Camiscione. In this appeal, the government contends that, even under an abuse-of-discretion scope of review, Camiscione's sentence is substantively unreasonable. We agree because the district court imposed a sentence upon Camiscione without considering general deterrence to the population at large and articulating how it avoids unwarranted sentence disparities under 18 U.S.C. § 3553(a). Therefore, we again vacate Camiscione's sentence and remand to the district court for expeditious resentencing.

I.

We set forth the facts in *Camiscione I*:

> During the course of a national and international investigation of internet child pornography, investigators discovered that Camiscione was in possession of child pornography. The evidence indicated that between May and October 1999, Camiscione used his credit card 22 times to purchase memberships to child pornography websites. The purchases included 30-day subscriptions to sites such as "The XXX Files," "Youngest Teens Hardcore," and "Children of God." On October 9, 2002, through a pretextual phone call, investigators confirmed that Camiscione had internet capabilities at his home and that he was the primary user.

> On October 22, 2002, a federal search warrant was issued, and Camiscione's residence was searched. As a result of the search, 42 images of child pornography were found on Camiscione's computer and 20 more images were found on floppy discs belonging to him. Some of these images depicted prepubescent, children under 12 years of age. One image was of a child approximately four years old. During the search, Camiscione waived his rights and provided written and oral statements admitting to purchasing subscriptions and downloading child pornography.

After the search and on his own free will, Camiscione sought treatment to help determine the cause of his improper conduct. In early 2003, Camiscione consulted Dr. James Pallas of the Center for Marital and Sexual Health. Under Dr. Pallas' supervision, Camiscione underwent a full evaluation and was diagnosed with Sexual Compulsivity (Sexual Disorder, Not Otherwise Specified (NOS)); Probable Attention Deficit Hyperactivity Disorder, Combined Type; Depression NOS; Anxiety NOS; and Borderline Personality Disorder with Passive Aggressive and Dependent Features. "Dr. Pallas recommended psychiatric follow up and 'behavioral intervention by a counselor who should utilize a concrete and problem-focused approach to psychotherapy.'" Adhering to the recommendations of Dr. Pallas, Camiscione sought counseling from Dr. Yogesh K. Desai, a psychiatrist, and Larry Borka, a therapist, at the Rehabilitation Center in Mansfield, Ohio. Over the course of six months, Camiscione received treatment.

On December 7, 2004, an information was filed against Camiscione in the United States District Court for the Northern District of Ohio, Eastern Division. The one-count information charged Camiscione with knowingly possessing visual depictions that had been transported in interstate commerce depicting persons under the age of eighteen engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252 (a)(4) and (b)(2). On December 9, 2004, a plea agreement was filed, and on December 21, 2004, Camiscione pled guilty. Sentencing was set for March 23, 2005.

Prior to sentencing, Camiscione sought further psychological assessment from Dr. Robert L. Smith, a clinical psychologist and addiction specialist. Similar to Dr. Pallas, Dr. Smith diagnosed Camiscione with Sexual Disorder NOS and Attention Deficit/Hyperactivity Disorder – Combined Type. Dr. Smith also diagnosed Camiscione with Identity Problem, Major Depression – single episode, and Seizure Disorder. As a result of these disorders, Dr. Smith concluded that Camiscione experienced reduced mental capacity and was unable to control his behavior at the time of the offense even though he knew it was wrong. Significantly, Dr. Smith opined that these impairments make Camiscione highly susceptible to being influenced by others, and thus making him "vulnerable to being victimized in a prison environment."

Camiscione filed Dr. Smith's evaluation under seal. This prompted the district court to postpone sentencing and to utilize the initial sentencing date of March 23, 2005 as a pretrial conference. During the conference, the court expressed reservations about Dr. Smith's report and requested more information about Camiscione. The district court also expressed concern about Camiscione's mental condition and his safety if incarcerated. In response to the district court's unreadiness, Camiscione filed a motion for psychological evaluation at the government's expense which identified a psychiatrist. The government objected to the selected psychiatrist and recommended Camiscione be evaluated by the Federal Correctional Institute in Butner, North Carolina, a federal facility designed for such evaluations. Additionally, and in response to the district court's concern over

Camiscione's safety if incarcerated, the government offered a letter from Dr. Andres Hernandez, Director of the Sex Offense Program at the Federal Correctional Institute in Butner, North Carolina, stating that "incidents of violence among sex offenders in the federal system is extremely low."

On June 10, 2005, the district court granted Camiscione's motion for psychological evaluation, and on July 5, 2005, Camiscione was admitted to the Federal Medical Center ("FMC") in Butner, North Carolina. The district court directed that Camiscione be evaluated regarding his susceptibility to coercion, his possible diminished intellectual functioning, his ability to function as an independent adult, and any evidence that Camiscione is pedophilic and may act on those impulses. On September 12, 2005, after completing a forensic evaluation of Camiscione, the FMC issued its findings to the district court. Contrary to the diagnosis of Dr. Pallas and the report of Dr. Smith, the FMC deemed Camiscione to be suffering from pedophilia and not Sexual Disorder NOS. In particular, the FMC concluded that Camiscione is of average intelligence, with no indication of diminished intellectual functioning, is capable of functioning as an independent adult, and is not unduly susceptible to coercion. The FMC added that the prior diagnosis of Camiscione "appear[s] to be based primarily on results of psychologic testing with limited clinical correlation." Notwithstanding its findings, however, the FMC recommended that Camiscione continue to "participate in ongoing psychologic treatment for behavioral therapies to address pedophilia."

On November 1, 2005, the district court sentenced Camiscione. Pursuant to the plea agreement, the district court determined that Camiscione had a base offense level of 15, to which six points would be added (two points because the material involved prepubescent minors, two points because ten or more items were possessed, and two points because a computer was used), and that three points would be deducted for his acceptance of responsibility. The district court calculated Camiscione's offense level to be 18 and his criminal history category to be I. Thus, the guidelines called for a sentence range of 27-33 months.

Before determining Camiscione's sentence, the district court thoroughly reviewed the psychological reports of Dr. Smith and the FMC. The district court also entertained arguments from both counsel for the defense and the government. After considering the evidence, the district court noted several factors. First, the district court noted Dr. Smith's findings that Camiscione's "reduced mental capacity resulted in his inability to control his behavior at the time of the offense, even though he was aware that it was wrong" and that "Camiscione's impairments place him at risk of being unduly influenced and or [sic] controlled by others which would leave him vulnerable to be victimized in a prison environment." Second, the district court noted that Camiscione experienced epileptic seizures and expressed concerns about his inability to receive medication in prison. Third, the district court commented that five years had passed since Camiscione had viewed the

pornographic images and there was no evidence that Camiscione had molested any children either before or after the search of his home.

After considering all of these reasons, the district court concluded, "I just don't think that a long prison term is the right response for this particular defendant." Accordingly, the district court sentenced Camiscione into the custody of the United States Marshal's Office for the remainder of the day followed by supervised release for a period of three years. The district court also waived the imposition of a fine and ordered Camiscione to perform 180 hours of community service. Noting the government's objection to the sentence, the district court explained,

> I really am not inclined to sentence this man to prison when I know some of the things that will happen to him. That's not going to help him get better. And I would prefer to let him live a reasonable normal life. If he doesn't get better, he's going to be back before me for violation of some condition of his supervised release, and maybe at that time I would feel okay, you know, now you go to jail, but with the reports such as the one that we have hear [sic], I just don't feel that prison is the appropriate way to handle this defendant.

207 F. App'x at 632-34 (citations to record omitted). Thereafter, the government appealed Camiscione's sentence to this court, contending that the sentence was unreasonable in light of the 27 to 33 months of imprisonment recommended by the Sentencing Guidelines and the district court's alleged failure to consider properly the 18 U.S.C. § 3553(a) sentencing factors. *Id.* at 635.

In *Camiscione I*, we analyzed Camiscione's sentence for both procedural and substantive reasonableness. *See id.* ("In reviewing challenges to a sentence, 'we have distinguished between the procedural and substantive reasonableness of sentences.'") (quoting *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006)). Although we ruled that Camiscione's sentence was procedurally reasonable, *see Camiscione*, 207 F. App'x at 635-36, we held that it was substantively unreasonable. *Id.* at 636-38. In so concluding, we expressed no agreement or disagreement with the degree of the variance applied by the district court; rather, our ruling was based upon the district court's failure to explain its sentence adequately so as to permit our review of the substantive reasonableness of the sentence:

> [W]e are not disagreeing with the district court's application of the § 3553(a) factors it considered. Nor are we saying the district court failed to identify evidence supporting its findings. Rather, we simply conclude that the district court's sentence is unreasonable because it failed to address several factors we believe to be pertinent. It is true that after considering Camiscione's history and characteristics, the seriousness of the crime, and Camiscione's need for medical treatment, the district court "did not think that a long prison term is the response for this particular defendant." Notably, however, the district court neglected to consider and articulate how its sentence – an afternoon with the United States Marshal's Office followed by three years of supervised release – deterred Camiscione from committing future crimes, *see* § 3553(a)(2)(B); protected the public from further crimes, *see* § 3553(a)(2)(C); and how this sentence avoided sentencing disparities, *see* § 3553(a)(6). If these factors were in fact considered by the district court, the record is devoid of such reasoning.
>
> * * *
>
> [W]e believe that the circumstances presented in this case – particularly, the possibility that Camiscione may re-offend – merit the district court's consideration of how a one-day sentence deters Camiscione from future crimes and protects the public from further crimes.

*Id.* at 637-38 (citation to record omitted). Accordingly, we vacated Camiscione's sentence and remanded the case to the district court for resentencing. *Id.* at 638.

## II.

Nearly nine months after our mandate in *Camiscione I* issued, the district court scheduled Camiscione's resentencing hearing. Both parties filed resentencing memoranda, and the district court heard argument at the February 6, 2008, hearing.

The government argued that the district court should impose a within-Guidelines sentence or, at minimum, a sentence in excess of twelve months of imprisonment to render Camiscione eligible for the sex offender treatment program at the Federal Medical Center in Butner, North Carolina ("FMC"). The government emphasized that the middle of the 27- to 33-month term of imprisonment recommended by the Sentencing Guidelines was only one-half of the five-year mandatory minimum term of imprisonment for simple receipt of child pornography imposed by Congress several months after Camiscione was charged. *See* 18 U.S.C. § 2252(b)(1). The prosecutor also argued that a substantial term of imprisonment was appropriate because Camiscione spent approximately $30,000 downloading

pornography over a period of three years or more, went bankrupt doing so, and only stopped his criminal behavior and sought treatment when law enforcement caught him and intervened.

As it had done at Camiscione's first sentencing hearing, the government relied upon the findings of Dr. Hernandez and the FMC. The prosecutor apprised the district court of a study conducted by Dr. Hernandez, in which he found that 85 percent of inmates who were being treated for receiving and/or distributing child pornography also admitted to perpetrating hands-on sexual contact with minors. That percentage contrasted with the information known at sentencing, in which 75 percent of such inmates "had no documented hands-on victims, and the other 25 percent had no contact with a hands-on sexual act." According to Dr. Hernandez, this data "indicat[ing] . . . an 85 percent likelihood that a person convicted of [internet] child pornography has had a hands-on sexual case" is "consistent with his observations over the years" and suggests that "internet child pornographers are far more dangerous to society than we had previously thought[.]" The district court responded that this data was "a one-sided statistic" because "it doesn't tell you how many hundreds of thousands of people looked at [child pornography] that didn't ever molest a child."

The prosecutor reminded the district court that the FMC evaluated Camiscione independently pursuant to the court's order and that Dr. Hernandez characterized Camiscione as "a typical sex offender[.]" According to the FMC evaluation, Camiscione had average intelligence, could function as an independent adult, and, unlike previous findings by Camiscione's own mental health practitioners, there was no indication that he suffered from diminished intellectual functioning or was unduly susceptible to coercion. The district court remarked that it "appreciat[ed] the difference between the conclusions reached at Buttner [sic] compared to the conclusions reached by" Camiscione's hired evaluators. In addition, the district court stated it "knew from experience" that the FMC "had a very good program there for doing a lot of tests that were not done by the earlier psychologists or as they put it clinical program."

Although the district court acknowledged Camiscione's eligibility for the FMC treatment program, it nevertheless rejected the option as unfeasible, citing its own prior

experience that the program was "very crowded[.]"  The district court expressed concern that, if the program had no space, Camiscione would be placed in the general prison population which, according to the court, "was a very bad idea for this Defendant" because he "would be vulnerable to what happens to people accused of these kinds of criminal matters in the general population."  The government countered:  "[I]f the Court took the attitude [that] it is crowded down there, then, they would be empty, and no one would be down there getting the treatment that they might need."  The prosecutor also noted Dr. Hernandez's finding that Camiscione would not be unduly susceptible to being influenced in prison.  Disagreeing, the district court stated:  "No.  What . . . the Bureau of Prisons does is come back and say there is a small percentage of this kind of thing happening in the general population, but that's not what they tell you at the side."

The district court also wanted the record to reflect that Camiscione had already completed a sex offender treatment program on January 30, 2008.  Camiscione's attorney expounded that Camiscione participated in the program for two years and that the program did not predate Camiscione's sentencing; rather, it was court-ordered as part of Camiscione's supervised release.  The government responded that Camiscione's compliance with this condition of his supervised release was irrelevant to assessing the reasonableness of "what sentence should have been imposed."

To "show the public's view" regarding child pornography and to demonstrate the harm caused by it, the prosecutor attempted to read a portion of a statement written by a mother whose child was a victim of the child pornography industry.  Camiscione's attorney objected, and the district court questioned the relevance of the mother's statement because there was no evidence that Camiscione made, distributed, or profited from child pornography, and he had not purchased child pornography over the internet since being placed on supervised release. The district court also characterized Camiscione as "the victim of the people that published this."  The government took issue with the district court's labeling of Camiscione as a "victim," responding:  "No.  He was the one that viewed this for his personal satisfaction and enjoyment, and because of that, there are more victims out there.  He is not a victim.  He is a perpetrator."  According to the district court, however, Camiscione was no longer purchasing child pornography, his sentence forbids him from

doing so, and sentencing him to jail "wouldn't have made any difference in terms of his effect or the effect of my sentence on people that are marketing this material."

The prosecutor protested the district court's reliance upon Camiscione's post-conviction and uncharged conduct – Camiscione's lack of participation in creating or distributing child pornography – as a reason to apply a downward variance from the Sentencing Guidelines. He argued that the Sentencing Guidelines range applied only to the offense of which Camiscione was convicted and that Camiscione's Guidelines range would have been five times greater had he solicited a child for sex. The prosecutor concluded his argument by requesting that the district court sentence Camiscione "in the properly calculated guideline range and in excess of one year so he can get treatment at a place like Buttner [sic] FCI."

In support of the district court's original sentence, Camiscione's attorney argued that his client had successfully completed the treatment program ordered by the district court and that Camiscione's treatment team concluded that he benefitted from the program, accepted his illness, and "was making great strides to resolve his problems." Defense counsel also challenged Dr. Hernandez's conclusion of an 85 percent likelihood that Camiscione sexually abused a minor by noting Dr. Hernandez's concession that his study "was published after a meeting . . . of his peers, that it had no statistical value. It had not undergone peer review. It was simply histories he took from men that he treated." Additionally, Camiscione's attorney reminded the court that Dr. Hernandez's own report indicated that "behavior programs focusing on sexual disorder[s] have documented efficacy in treating Mr. Camiscione's condition" and that there was a low risk that Camiscione would act on his pedophilia in the future. "[P]ast behavior being the best indicator for future behavior[,]" defense counsel asserted, "[i]t is noteworthy that Mr. Camiscione has never perpetrated personally and physically a sexual act on a child or adolescen[t]."

Concluding the resentencing hearing, the district court stated:

> I think what I didn't make clear in sentencing before was that the stringency of the conditions of the supervised release, it was going to be a pretty rough road to hoe for the next three years, and this Defendant has managed to do it.

I think, like I say, I haven't had a Defendant like Mr. Camiscione involved in this kind of case before, and I still think the sentence that I did may be risky at the time but was appropriate, and I guess Mr. Camiscione has confirmed my trust in him that he would be able to stick with those conditions to the satisfaction of the probation office.

And I appreciate that, and I do intend to indicate in resentencing that the Sixth Circuit has not disagreed with the sentence, at least three places in their opinion, and that they are asking for more reasons why I believe that this sentence protects the public as much as was necessary that I could in this particular case.

* * *

[M]y intention now is to continue the sentence as it has been approved by the Circuit but is asking for more specifics. But before I put that order out, you can assume that that's what I am going to do, but I do want to look at these cases, and you will have a written opinion within a week.

On April 8, 2008, nearly two months after the resentencing hearing, the government filed a motion for entry of judgment requesting that the district court enter its written judgment on the record. More than five months thereafter, or September 16, 2008, the district court entered its Judgment and Order, which it corrected on September 18, 2008.

The September 18, 2008, Judgment and Order reimposed the district court's original sentence of a partial day in the custody of the United States Marshal's Office, three years of supervised release, and 180 hours of community service upon Camiscione and supplemented the reasons articulated by the district court at the resentencing hearing. Finding support in *Gall v. United States*, 552 U.S. 38 (2007), the district court wrote that it "takes very seriously the duty of a sentencing judge to evaluate each person as a unique individual, recognizing that a person's unfortunate circumstances may not fall neatly within the confining rubric of the formulaic sentencing table." The district court acknowledged that Camiscione's sentence "may appear 'unusually lenient'" but stated that his sentence was "fully justified in his particular case." Before addressing the three 18 U.S.C. § 3553(a) sentencing factors that *Camiscione I* required the district court to consider on remand – deterrence, protection of the public, and avoidance of sentencing disparities – the district court prefaced its analysis as follows:

Camiscione's actions were improper and illegal. But the proper punishment is not always incarceration. Camiscione is 33 years old and lives with his

mother.  As a result of having epileptic seizures from the age of three, he was taunted and teased as a child and as a teenager, which greatly affected his schooling and mental and social development.  He has had no real friends and has never dated a woman because he is too shy and frightened of rejection.  Prison sentences serve many reasons; however, Camiscione's lamentable case would not further any of those reasons and would only be made more tragic were this court to sentence him to prison.

(Footnote omitted.)

The government timely appeals.

### III.

The parties agree that the sole issue in this appeal is whether Camiscione's sentence of a partial day in the custody of the United States Marshal's Service followed by a three-year period of supervised release and 180 hours of community service for possession of child pornography was substantively reasonable.  The government acknowledges that *Gall* rejected the standard of review we applied in *Camiscione I*.  However, the government contends that *Gall* did not obviate the requirement that a district court adequately justify a variance from the correctly-calculated Guidelines range by properly considering the 18 U.S.C. § 3553(a) sentencing factors.  Regarding the § 3553(a) factors, the government argues that:

> Although the district court mentioned the [§ 3553(a)] factors of protecting the public, deterrence and avoiding unwarranted sentencing disparities . . . , the court failed to fully explain how its sentence had any real deterrent effect on Camiscione or others or served to avoid unwarranted disparities in sentencing among similarly situated defendants.  The court ignored evidence that Camiscione is a typical sex offender with average intelligence who obtained treatment only after being caught.  At bottom, a prison sentence of one day at the U.S. Marshal's Office with no period of home detention or even a fine makes light of a serious sex offense which, if committed today, would carry a five-year mandatory minimum prison term.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court "replaced the *de novo* standard of review required by 18 U.S.C. § 3742(e) with an abuse-of-discretion standard that [it] called 'reasonableness' review." *Rita v. United States*, 551 U.S. 338, 361 (2007) (Stevens, J., joined by Ginsburg, J., concurring).  Under that deferential standard,

"[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

"A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (internal quotation marks and citation omitted). Although *Gall* "reject[s] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and disallows "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence[,]" *see Gall*, 552 U.S. at 47, it nevertheless "permits district and appellate courts to require some correlation between the extent of a variance and the justification for it." *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008). In this regard, *Gall* instructs the sentencing judge that:

> [i]f he decides . . . an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Gall*, 552 U.S. at 50. *Gall* also reaffirms that "even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46 (footnote and citation omitted). Thus, at the same time that *Gall* forbids an appellate court from applying a presumption of unreasonableness to an outside-Guidelines sentence, it permits reviewing courts to:

> take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . . [The court] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.

*Gall*, 552 U.S. at 51.

IV.

In the present case, the district court on remand held two sentencing hearings, ordered a comprehensive psychological evaluation at a federal facility, delivered a written opinion, and deliberated extensively over its sentencing decision. It is apparent that the district court took seriously the "'uniform and constant . . . federal judicial tradition . . . [of] consider[ing] every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) (footnote omitted)).

The district court reasonably identified several facts which, under an abuse-of-discretion standard, might justify a more lenient sentence than would otherwise have been appropriate. These include: Camiscione's lack of criminal history, "remorse" and "considerable disgust with his own pedophilic behaviors[,]" acknowledgment of his illness, cooperation with law enforcement and admission of his crime, determination and effort to treat his condition and change his behaviors, consistent attendance and compliance with all treatment programs, participation in "[b]ehavioral programs focusing on sexual disorder [which] have documented efficacy in treating Mr. Camiscione's condition[,]" "low risk" of acting on his pedophilia in the future, and lack of substance abuse and antisocial or conduct disordered traits that might otherwise increase his risk of recidivism. In a nutshell, the district court did not clearly err in finding that Camiscione has a problem, acknowledges it, has made efforts to get better, and has a good prognosis.

While the district court thoroughly considered the "nature and circumstances of the offense and the history and characteristics of the defendant[,]" *see* § 3553(a)(1), and "the need for the sentence imposed – to provide the defendant with needed . . . medical care," *see* § 3553(a)(2)(D), the sentence imposed must do more. The § 3553(a) factors *also* require the court to consider "the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law[,]" *see* § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," *see* § 3553(a)(2)(B), "to protect the public from further crimes of the defendant[,]" *see* § 3553(a)(2)(D), and "to avoid unwarranted sentence disparities . . . . ," *see* § 3553(a)(6). The district court did not adequately consider or justify

how its sentence promoted general deterrence or avoided unwarranted sentence disparities, and under an abuse-of-discretion standard, we are unable to uphold the sentence.

The district court explained that its sentence deterred Camiscione from further criminal conduct because its conditions of supervised release make it unlikely that he will return to viewing child pornography. However, in focusing exclusively on how its sentence deterred Camiscione, the district court failed to consider how its sentence provided adequate "general deterrence" to the population at large. *See United States v. Medearis*, 451 F.3d 918, 920-21 (8th Cir. 2006) ("General deterrence . . . is one of the key purposes of sentencing, and the district court abused its discretion when it failed to give that matter its proper weight."). General deterrence is crucial in the child pornography context, as the Seventh Circuit has explained:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded . . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted); *see also United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing, but in fact received not a word from the District Court.").

Neither the district court's comments at both sentencing hearings nor its written opinion after remand gave any indication that it even considered how its admittedly "lenient" sentence would deter others generally from purchasing and viewing child pornography. Camiscione's sentence, which was devoid of any significant period of incarceration, home confinement, or substantial fine undermines the purpose of general deterrence.

The district court stated that its sentence "avoided unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[,]" *see* § 3553(a)(6), because Camiscione is "very different from other defendants accused of

the same or similar crimes." The court explained that "Camiscione never inappropriately touched a child, nor did he ever sell or distribute child pornography." Quoting Dr. Smith's psychological evaluation, the court also noted that Camiscione was "highly susceptible to being influenced and/or controlled by others. . . . Consequently, he would be vulnerable to being victimized [raped] in a prison environment." (Internal quotation marks and footnote omitted.)

However, it is not logical to justify a more lenient sentence on the basis that Camiscione did not make or distribute child pornography or molest a child. Just as the federal sentencing laws impose greater sentences upon sellers of controlled substances than upon those who are caught possessing such substances, Camiscione concedes that the federal child sexual offense laws do so as well. Indeed, the Sentencing Guidelines take into account only the criminal conduct of which Camiscione was charged. Similarly, Camiscione's "[p]hysical condition or appearance, including physique," and his "[m]ental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted, except as provided in [5K.2,]" none of which the district court cited or appear on their face to justify a downward variance in the present case. *Cf.* U.S.S.G. §§ 5H1.3 & 5H1.4. Further, the district court's concern that Camiscione "would be vulnerable to what happens to people accused of these kinds of criminal matters in the general population" is an improper sentencing consideration. *Cf. United States v. Wilke*, 156 F.3d 749, 753 (7th Cir. 1998) ("[A] district court may not rely on the nature of a defendant's offense as a factor justifying a sentencing departure for vulnerability to abuse in prison.").

## V.

On two other occasions, we have considered whether one-day sentences of imprisonment for simple possession of child pornography are substantively reasonable. *See United States v. Stall*, 581 F.3d 276 (6th Cir. 2009); *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008). In both cases, we affirmed the sentences under the more stringent plain-error standard of review, and the sentences were more severe than Camiscione's sentence. The sentences in *Stall* and *Prisel* included substantial periods of home confinement as part of the defendants' supervised release, as well as significant fines. *See Stall*, 581 F.3d at 281 (affirming, under plain-error review, a sentence of one day of imprisonment, ten years of

supervised release, the first year of which was under home confinement, and a $5,000 fine for possession of eighteen images of child pornography, where the applicable Guidelines range, under the increased penalties resulting from the Sentencing Commission's amendment of U.S.S.G. § 2G2.2, was 57 to 71 months of imprisonment); *Prisel*, 316 F. App'x at 380 (affirming, under plain-error review, a sentence of one day of imprisonment, three years of supervised release, the first eighteen months of which were under home confinement with electronic monitoring, and a $6,000 fine for possession of 1,189 images and five digital movies containing child pornography, where applicable Guidelines range was 27 to 33 months of imprisonment). Both *Stall* and *Prisel* expressly distinguished *Camiscione I*. *See Stall*, 581 F.3d at 285 (noting that "Camiscione had more than three times as many images" as Stall and stating that, "unlike in *Camiscione*, where we reviewed the sentence only for reasonableness, here we are reviewing the sentence for plain error, which is more deferential . . . ."); *Prisel*, 316 F. App'x at 386 ("We also note that Camiscione's sentence, unlike Prisel's, did not include 18 months of house arrest, nor did it include a fine.") (internal quotation marks omitted).

*Stall* has factual similarities to the present case. Like Camiscione, Stall had no criminal history, was "remorseful and distraught" upon being caught, expressed "empathy for children harmed as a result [of his crime][,]" and "quickly sought mental health treatment[.]" *Id*. at 277-78 (internal quotation marks omitted). The district court heard testimony from Stall's psychologist who explained that Stall was "isolated[,]" "lonely[,]" "suffered from undiagnosed and untreated depression at the time of his offense[,]" and browsed the internet as an "obsessive and compulsive" manifestation of his "self-loathing[.]" *Id*. at 279 (internal quotation marks omitted). Stall's psychologist opined that "it was unlikely that Stall would reoffend" because he "did not have a 'criminal mind' or exhibit the qualities of a psychopath. . . . [a]nd was now being treated for depression, which . . . made him less likely to reoffend and more likely to respond to treatment for sexual compulsive disorder." *Id*. Stall "was demonstrably committed to therapy, showing up on time, never missing an appointment, and expressing remorse for the role he played in the exploitation of children." *Id*. Moreover, Stall, as an internet sex offender, was "significantly less likely to fail in the community than [a] child molester[] in terms of all types of recidivism[,]" and "if Stall continued treatment and remained responsive, 'the prognosis [was] positive' and

Stall could 'make a contribution to society.'" *Id.* (internal quotation marks omitted). In the psychologist's view, Stall's treatment "might be less effective" if Stall were incarcerated. *Id.*

Although the district court in *Stall* rejected the 57 to 71 months of imprisonment recommended by the Sentencing Guidelines for Stall's possession of eighteen images of child pornography, it nevertheless sentenced him to a lengthy ten-year period of supervised release, the first year of which required home confinement, and imposed a $5,000 fine upon him. *Id.* at 281. In affirming the sentence under plain-error review, the *Stall* majority noted that "Stall's sentence of ten years of supervised release is 27 months longer than the total period of incarceration and supervised release recommended by the PSR and the government." *Id.* at 283. Camiscione's sentence of a partial day in the custody of the United States Marshal's Service followed by a three-year term of supervised release under a recommended Guidelines range of 27 to 33 months of imprisonment for possessing 62 images of child pornography does not begin to approach the severity of Stall's sentence.

VI.

Further aiding in the analysis of whether Camiscione's sentence constitutes an unwarranted sentence disparity is the legislature's current view. As it stands today, Congress deems reasonable a mandatory minimum sentence of five years of imprisonment for simple receipt of child pornography over the internet, *see* 18 U.S.C. § 2252(b)(1), a penalty which Camiscione conceded at oral argument would apply to him had he possessed child pornography after the statute's effective date. That five-year mandatory term of imprisonment reflects a consistent trend by Congress of increasing criminal penalties for the possession of child pornography. *See Pugh*, 515 F.3d at 1198 (surveying Congressional findings and statutory enactments). Although the five-year mandatory minimum penalty post-dated Camiscione's offense and was therefore inapplicable to him, that fact does not obviate the penalty's usefulness as a powerful persuasive authority in assessing the reasonableness of Camiscione's sentence. *See United States v. Kirchhof*, 505 F.3d 409, 414 (6th Cir. 2007) ("[I]t is the prerogative of Congress to fix the sentence for a federal crime and the scope of judicial discretion with respect to a sentence[,]" and "it is not the court's

role to second-guess the legislative determination of appropriate sentences made by Congress.") (citing *Mistretta v. United States*, 488 U.S. 361, 364 (1989)).

Had the district court sentenced Camiscione to 30 months of imprisonment, the middle of the recommended 27- to 33-month Guidelines range, his sentence would still have been only *half* of the 60 months of imprisonment *minimum* now required under 18 U.S.C. § 2252(b)(1) for receiving child pornography.  Not only did the district court refuse to sentence Camiscione to this much lower term of imprisonment under the advisory Guidelines range, but it sentenced him to virtually no incarceration at all, save for a partial day with the United States Marshal's Service.

The large discrepancy between the district court's sentence and the statutory minimum now required for the same conduct raises serious questions about the reasonableness of the district court's sentence on these facts.  That concern becomes more apparent when we compare Camiscione's sentence to the more severe one-day sentences we affirmed in *Stall* and *Prisel*, which included substantial fines, significant periods of home confinement with electronic monitoring, or longer terms of supervised release. *See Stall*, 581 F.3d at 283 (expressing "doubt" about whether the district court's sentence of a ten-year term of supervised release rather than incarceration "promotes just punishment" but  ruling that "both the duration and the conditions of Stall's supervised release are such that we likewise cannot say that the sentence constitutes an abuse of discretion.").

## VII.

For these reasons, we vacate Camiscione's sentence and remand to the district court for expeditious resentencing.