[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12240

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NICHOLAS HAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00179-WFJ-SPF-2

_____

Before JILL PRYOR, NEWSOM, and HULL, Circuit Judges.

PER CURIAM:

Nicholas Ham appeals his 66-month sentence for distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On appeal, Ham argues that his above-advisory-guidelines sentence is substantively unreasonable because (1) the district court found, without sufficient justification, that the 18 U.S.C. § 3553(a) factors support his sentence and (2) his sentence resulted in unwarranted sentencing disparities. After careful review of the record, we affirm Ham's 66-month sentence.

## I.    FACTS

On September 18, 2019, 21-year-old Ham purchased what he believed were several bags of heroin from his supplier. Ham loaded some of the substance into a smoking device, smoked it, and then gave the device to his minor girlfriend, G.W. G.W. overdosed. Ham administered two doses of Narcan to G.W. and attempted to resuscitate her. G.W.'s friend contacted emergency services, who treated G.W. on the scene and then took her to a hospital. Law enforcement officers apprehended and arrested Ham. A laboratory analysis of the substance consumed by G.W. detected fentanyl.

While in jail, Ham placed several relevant phone calls to his mother and G.W. In one phone call with his mother, Ham instructed her to retrieve a stash of Xanax that he had stored in a post office box and told her that he intended to flee if he made bail.

In another call, Ham and his mother discussed her progress in selling the Xanax to make money to pay for Ham's attorney.

Further, in several phone calls with his mother, Ham indicated that he intended to obstruct justice, either by promising to assault G.W. or otherwise preventing her from cooperating with law enforcement. Specifically, Ham declared his intent to (1) beat G.W., (2) kill G.W. by "spray[ing] her house" with an AR-15, and (3) rob G.W.'s new boyfriend and "sho[o]t up" his house. In addition, Ham asked his mother to persuade G.W. not to cooperate with authorities.

Ham also contacted G.W. himself to try to convince her to lie to protect him. In one call, Ham instructed G.W. to lie in her deposition about his role in the overdose. In another call, Ham asked G.W. to skip her deposition, advising that she was required to attend only the trial.

After Ham was released from jail on bail, Ham repeatedly called, texted, and emailed G.W., despite a court order forbidding him from contacting her. On March 6, 2020, G.W. recorded a phone call during which she twice asked Ham to stop calling her and Ham said, "I'm only talking to you so you don't testify." On March 9, 2020, authorities arrested Ham for violating the no-contact order, but Ham was released on bond that same day.

On March 29, 2020, Ham attended a party where G.W. and her new boyfriend were also present. At that party, Ham "sucker-punched" G.W. in the face multiple times, causing her to fall to the ground. Ham then climbed on top of G.W. and continued

punching her.  G.W. suffered two black eyes and a concussion.  A bystander called 911, an officer arrived on the scene, and Ham was arrested.

Back in jail, Ham placed more phone calls to his mother. During those phone calls, Ham said (1) he "should have killed [G.W.'s] bitch ass" and (2) G.W. "deserved to get the fuck beaten out of her."  Ham also asked his mother to pay G.W. money in exchange for her refusal to cooperate with the prosecution.

## II.     PROCEDURAL HISTORY

### A.     Indictment & Guilty Plea

In June 2020, a federal indictment charged Ham with one count of distribution of fentanyl resulting in serious bodily injury, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Pursuant to a written plea agreement, Ham waived his right to be charged by indictment and pleaded guilty to a superseding information charging him with distribution of fentanyl—without serious bodily injury—in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

### B.     Presentence Investigation Report ("PSR")

Ham's PSR recommended (1) a base offense level of 12, (2) a two-level increase under U.S.S.G. § 3C1.1 for Ham's several attempts to obstruct justice by attempting to threaten G.W. and convince her not to testify against him, and (3) a two-level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.  Ham's adjusted offense level was 12.

With four criminal history points, Ham's criminal history category was III.  Ham's advisory guidelines range was 15 to 21 months' imprisonment.

## C.    Sentencing

At sentencing, the government did not (1) request a specific sentence or (2) make a motion for an upward variance.  Ham requested a sentence of time served because of the time he had already served (27 months) on related state charges.

The district court found that an upward variance was warranted and sentenced Ham to 66 months' imprisonment, followed by 5 years of supervised release.

The district court noted that it had considered (1) the record, (2) the nature and circumstances of the offense, (3) the violence involved, (4) the need for public safety, (5) the advisory guidelines range, and (6) all the factors identified in 18 U.S.C. § 3553(a)(1)–(7).[1]

The district court explained that the upward variance was supported by the following: (1) the severity of the conviction;

---

[1] Section 3553(a) directs the court to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, protect the public from future crimes of the defendant, and provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the applicable guidelines range; (5) the pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to victims.

(2) the underlying violence described in the PSR; (3) the need for the public to be protected; (4) the need for specific and general deterrence; and (5) the fact that Ham's guilty plea to the charge in the information allowed Ham to avoid an adjusted offense level of 38 that accompanied the initial charge in the indictment.

Indeed, if Ham had been convicted of the original serious-bodily-injury charge in the indictment, (1) he would have been subject to a 20-year statutory minimum sentence, and (2) his base offense level would have been 38. *See* 21 U.S.C. § 841(b)(1)(C) ("[I]f death or serious bodily injury results from the use of [fentanyl, the defendant] shall be sentenced to a term of imprisonment of not less than twenty years[.]"); U.S.S.G. § 2D1.1(a)(2) (requiring a base offense level of 38 if the defendant is convicted under § 841(b)(1)(C) and "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance").

Ham appealed his 66-month sentence.

## III.    DISCUSSION

Ham contends that his above-advisory-guidelines sentence is substantively unreasonable. "We review the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023). Ham "bears the burden of establishing that his sentence is unreasonable based on the record and the § 3553(a) factors." *Id.*

The district court must impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). The district

court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *Oudomsine*, 57 F.4th at 1266.

"We will vacate a defendant's sentence as substantively unreasonable only if we are 'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Id.* (quoting *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc)).

## A.    Sufficient Justification for 66-Month Sentence

To begin with, Ham argues that his 66-month sentence is substantively unreasonable because the district court found, without sufficient justification, that the § 3553(a) factors support his sentence. We disagree. The district court clearly explained its reasons for imposing the 66-month sentence, and the court did so in light of the § 3553(a) sentencing factors.

The record establishes that Ham (1) distributed fentanyl to G.W. (his minor girlfriend) who then overdosed and nearly died, (2) urged G.W. to lie to authorities to protect him, (3) said in recorded phone calls that he would beat or kill G.W. to prevent her from cooperating and "sho[o]t up" her new boyfriend's house, and (4) "sucker-punched" and hit G.W. until she had two black eyes and a concussion.

When sentencing Ham, the district court expressly stated that it had considered (1) the record, (2) the nature and circumstances of the offense, (3) the violence involved, (4) the need for public safety, (5) the advisory guidelines range, and (6) all the § 3553(a) factors.[2]

In varying upward, the district court relied on the following: (1) the severity of the conviction; (2) the underlying violence described in the PSR; (3) the need for the public to be protected; (4) the need for specific and general deterrence; and (5) the fact that Ham's guilty plea to the charge in the information allowed Ham to avoid an adjusted offense level of 38 that accompanied the initial charge in the indictment. Accordingly, the district court sufficiently explained its reasoning for its sentence.

Ham also takes issue with the district court's consideration of the 20-year statutory minimum penalty that he would have faced if he had been convicted of the initial charge in the indictment. In deciding what sentence to impose, a district court may consider the penalty related to uncharged conduct. *See, e.g.*, *United States v. Camiscione*, 591 F.3d 823, 836 (6th Cir. 2010); *United States v. Reif*, 920 F.3d 1197, 1199 (8th Cir. 2019); *United States v.*

---

[2] While violent behavior and uncharged conduct are not factors set forth in § 3553(a), they are appropriate considerations when a district court reviews the history and characteristics of the defendant. *See, e.g.*, *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) ("[A] sentencing court may impose an upward variance based upon uncharged conduct as it relates to the history and characteristics of the defendant, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public.").

*James*, No. 20-12459, 2021 WL 2909729, at \*4 (11th Cir. July 12, 2021) (unpublished) ("[T]he penalty related to uncharged conduct can be helpful in assessing what sentence to impose."). Moreover, Ham's 66-month sentence is almost 15 years below that statutory minimum, which also indicates the district court did not abuse its discretion in sentencing Ham.

## B.    No Unwarranted Sentencing Disparity

Ham also asserts that his sentence is substantively unreasonable based on the disparity between his sentence of 66 months' imprisonment and sentences imposed on other defendants that distributed fentanyl to customers who overdosed or died. We disagree.

Section 3553(a)(6) is concerned with unwarranted disparities in sentencing among federal defendants. 18 U.S.C. § 3553(a)(6). When evaluating alleged sentencing disparities, we ask "whether the defendant is similarly situated to the defendants to whom he compares himself." *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015).

Ham has not shown that any of the cases he cites involve situations like his, where the defendant—in addition to distributing fentanyl—obstructed justice, declared his intent to harm or kill the victim, and physically attacked the victim. Those aggravating factors contributed to Ham's above-advisory-guidelines sentence. Instead of citing cases with the same or similar aggravating factors, Ham merely cited other cases where the defendant distributed drugs, the victim suffered serious bodily injury or died, and the

defendant received a lower sentence than Ham did. Without more information on those other cases, Ham has not shown those defendants are similarly situated to him. *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) ("A well-founded claim of disparity . . . assumes that apples are being compared to apples." (quotation marks omitted)).

But even if Ham had shown that the other defendants were similarly situated to him, that would not mean his sentence was substantively unreasonable. The district court was required to consider the § 3553(a) factors and was permitted to impose a different sentence based on the application of those factors to Ham's specific case. *Gall v. United States*, 552 U.S. 38, 52, 128 S. Ct. 586, 598 (2007) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (quotation marks omitted)). Consistent with that responsibility, the district court detailed specific facts about Ham and his conduct that led the court to conclude that a sentence of 66 months was reasonable. *See United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one." (quotation marks omitted)).

⋆    ⋆    ⋆

For these reasons, we conclude that Ham's 66-month sentence is substantively reasonable. We therefore affirm.

22-12240              Opinion of the Court                    11

**AFFIRMED.**