**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0694n.06
Filed: November 13, 2008

**No. 07-3281**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF OHIO, |
| | ) | EASTERN DIVISION |
| JOHN W. PRISEL, | ) | |
| | ) | **O P I N I O N** |
| _____**Defendant-Appellee.**_____ | ) | |
| _____ | ) | |

**Before: MOORE and WHITE, Circuit Judges; and VINSON,[*] District Judge.**

**WHITE, Circuit Judge.** Plaintiff-Appellant United States of America (the government) appeals the judgment of sentence entered on Defendant-Appellee John W. Prisel's (Prisel) guilty plea of one count of possession of visual depictions of minors engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B). The government argues that the district court unreasonably deviated from a Guidelines sentence range of 27 to 33 months' imprisonment to a sentence of one day in prison, followed by 18 months of home confinement. Finding no abuse of discretion, we **AFFIRM**.

### I. BACKGROUND

On May 13, 2002, a United States Postal Inspector in Philadelphia, Pennsylvania, opened a criminal investigation into elviejohermano@yahoo.com, who, since 1999, had been posting

---

[*]The Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

-1-

advertisements in Internet newsgroups regarding child pornography videos for sale. Acting in an undercover capacity, the Inspector posed as a potential customer and contacted elviejohermano through email. A Special Agent of the U.S. Customs Service, now the Bureau of Immigration and Customs Enforcement (ICE), in San Diego, California, initiated a separate investigation in July 2002, and contacted elviejohermano acting undercover. On September 30, 2002, the Phillipine National Bureau of Investigation (NBI) arrested Benjamin Villarcia Garcia, aka elviejohermano, in the Philippines for violations of Phillipine law regarding child pornography. When apprehended, Garcia had among his possessions Western Union receipts corresponding to money transfers made by the undercover agents, as well as receipts from customers from fourteen other countries.

The NBI executed search warrants and obtained information regarding Garcia's email accounts and records of his customers. On October 15, 2002, Garcia signed a consent form granting United States agents full control of four identified email accounts he had used. The Postal Inspector found information that Prisel had sent Garcia a $200 Western Union money order on January 18, 2002, to purchase four videotapes. The Inspector and Agent began contacting persons believed to have ordered videos from Garcia, including Prisel. On November 25, 2002, Prisel responded by email that he had not received the videos he ordered and still wanted them. In December 2002, a Special Agent of the ICE at the Cleveland ICE office was assigned Prisel's investigation.

On January 22, 2003, the Customs Agent called the ICE Agent to advise that he had had contact with Prisel through email in the past two days and that Prisel asked when the videotapes would be shipped. On January 31, 2003, a controlled delivery of child pornography videotapes was made to Prisel's residence in Parma, Ohio. A few minutes later, ICE agents executed a search warrant

and seized the videotapes, among other things. The warrant authorized a search for child pornography. The ICE agents advised Prisel of his rights, he waived his rights and made a statement.

On July 25, 2006, a grand jury returned a one-count indictment charging Prisel with possession of materials involving the sexual exploitation of children, 18 U.S.C. § 2252(a)(4)(B), which crime carries a maximum prison term of 5 years. On August 14, 2006, Prisel posted a $25,000 unsecured bond and was placed on pretrial supervision. No violations were reported. Prisel entered a plea of guilty to one count of violating § 2252(a)(4)(B) on August 25, 2006, without a plea agreement. At sentencing, the district court considered the advisory U.S. Sentencing Guidelines range of 27 to 33 months' imprisonment, and Prisel's objections thereto, and determined the base level offense was 15 (UNITED STATES SENTENCING GUIDELINES MANUAL [U.S.S.G.] § 2G2.4). To that base level, the court added two points for material involving a prepubescent minor [§ 2G2.4(b)(1)], added two points for 10 or more items containing visual depictions of sexual exploitation of minors [§ 2G2.4(b)(2)], added two points for use of a computer [§ 2G2.4(b)(3)], and subtracted 3 points for acceptance of responsibility [§ 3E1.1(b)]. The district court arrived at a final adjusted offense level of 18, with a criminal history category I, resulting in a Guidelines range of 27 to 33 months' imprisonment.

Prisel's counsel requested a below-the-Guidelines-range sentence of probation. The government requested a sentence within the Guidelines range and maintained that there was no basis to go below the Guidelines range.

The presentence investigation report (PSR) stated that the advisory Guidelines range of imprisonment was 27 to 33 months, and "identified grounds that may warrant an upward departure," i.e., "[p]ursuant to the commentary following USSG § 2G2.4, if the offense involved a large number

of visual depictions, an upward departure may be warranted, regardless of whether subsection (b)(2) applies. In this matter, the defendant's computer and other digital media contained 1,189 images of child pornography, of which 40 are of children cataloged in the National Child Victim Identification Program. Five digital movies were also found. The defendant had child pornography stored on two hard drives, three compact disks, and one Zip disk (used for mass storage). Agents also retrieved the four videotapes ordered and received by the defendant."

The district court sentenced Prisel to one day of imprisonment, followed by three years of supervised release, the first 18 months of which were under home confinement with electronic monitoring, and ordered that Prisel pay a $6,000 fine and a $100 special assessment. In addition to standard conditions of supervised release and of supervision, the court imposed the following "special conditions of supervised release:"

### SPECIAL CONDITIONS OF SUPERVISED RELEASE

The defendant shall participate in a Home Confinement Program with electronic monitoring for a period of 18 months, to commence no later than 30 calendar days from sentencing. The defendant required [sic] to remain at residence unless given written permission to be elsewhere. The defendant may leave his residence to work, to receive medical treatment and to attend religious services. The defendant shall wear an electronic monitoring device, follow electronic monitoring procedures, and submit to random drug/alcohol tests as specified by the probation officer. The defendant may participate in the Earned Leave Program. Further, the defendant will be required to pay for the daily cost of electronic monitoring services. A percentage of this payment may be waived, based on the probation officer's evaluation of the defendant's financial condition.

The defendant shall allow the probation officer access to his computer including hard and software. The defendant shall provide accurate information about all information regarding his computer system; all passwords used and all internet services and will abide by all the rules of the Computer Restriction and Monitoring Program.

The defendant shall participate in a mental health program at the direction of the probation officer.

The defendant shall be prohibited from incurring any new credit or establishing any additional lines of credit without approval of the probation officer.

The defendant shall provide the probation officer access to all requested financial information.

The defendant shall submit his/her person, residence, place of business, computer, or vehicle to a warrantless search, conducted and controlled by the U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall inform any other residents that the premises may be subject to a search pursuant to this condition.

The defendant will comply with all applicable requirements to register as a sexual offender. The defendant shall not seek, obtain or maintain any residence, employment, volunteer work, church or recreational activities involving minors (persons under the age of 18) in any way, without the prior express written approval of the probation officer. At the direction of the probation officer, the defendant shall participate in an outpatient mental health program, including treatment for sexual deviancy, which may include polygraph testing. The provision does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom the defendant must deal with in order to obtain ordinary and usual commercial services. The defendant shall not reside within direct view of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facility, or other places primarily used by persons under the age of 18.

The defendant's residence and employment shall be approved by the probation officer, and any change must be approved by the probation officer. The defendant shall submit any proposed changes to residence and/or employment to the probation officer at least 20 days prior to any changes.

An attachment to the Criminal Judgment sets forth the district court's "Statement of Reasons," with

item B checked:

I   COURT FINDINGS ON PRESENCE INVESTIGATION REPORT

A.      The court adopts the presentence investigation without changes.

B.  x   The court adopts the presentence investigation report with the following changes. (Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable. ) . . . .

(1) See Presentence Report Page 14-Paragraphs 83-86 on assessment of Specialist, Dean Fazekas, (2) defendant has no prior record; (3) Defendant is not a danger to the community and is seeking to make himself a better person. The court believes incarceration is not the appropriate path for this defendant. This court is instituting a high level of Home Confinement and an above range fine ($6,000.00) with many special conditions to comply with.

Under § V(C), entitled "Reason(s) for Departure," the district court checked the following categories:

5H1.1  Age
5H.1.2  Education and Vocational Skills
5H1.3  Mental and Emotional Condition
5H1.6  Family Ties and Responsibilities

Section VIII, entitled "ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE,"

states:

> This is a very unusual case and the probation department has written a very thorough and strong report[,] but this court believes that this defendant will not benefit from incarceration. He has voluntarily sought counseling and from the assessment [,] he does not render [sic?] any recidivism factors for future behavior with children. See Presentence Report - Paragraphs 80-86 and 91. This court feels that this is a one-time offender. The court imposed a high fine and high ends of Home Confinement on three years supervision. Along with the supervision is [sic] many special conditions including a warrantless search, registration for a sex offender and continued mental health treatment.

Paragraphs 80 to 86 and 91 of the 22-page PSR, on which the court heavily relied, include excerpts of letters to defense counsel from Dean Fazekas, MSSA, LISW, of Specialized Assessments and Treatment, who performed a psychological evaluation of Defendant and met with him again at least once thereafter.

**Mental and Emotional Health**

80. The defendant denies having ever been treated by a psychologist, psychiatrist, or counselor for any reason. His behavior was appropriate and he was cooperative during the presentence interview and investigation.

81.  Per instruction of counsel, the defendant was seen by Dean Fazekas, MSSA, LISW, of Specialized Assessments and Treatment, LLC for the purpose of a psychological evaluation.  The Abel Assessment for sexual interest tool was used in the [psychological] evaluation. . . .

82. The Abel Assessment is an objective measure taken beyond the client's awareness of sexual interest in 22 slide categories depicting children, teens, and adults, Caucasian and African American, and depiction of various deviant sexual behaviors. For comparison, the client also self-reports his rating of sexual arousal to the same slides.  It also provides probability values as to whether a person's profile matches that of known child molesters.  The two issues of particular interest to the provider was [sic] whether the defendant has a persistent interest in pre-school aged children, and whether the defendant has a persistent interest in school aged children.  The results of testing suggested the defendant's primary sexual interest is with adult females, followed by adolescent females.  The tool does not measure sexual interest in male or female children.  The defendant's self-reporting suggested the same.  He did not self report any sexual interest in male or female pre-school and school aged children.

83.  The defendant admitted to Mr. Fazekas that he "*spent a fair amount of time looking at age appropriate pornography on the website . . . .*" with his initial interest in "*normal pictures of naked women.*"  He eventually found he desired fetish type websites whose sexual themes were of less conventional sexual behaviors.

84.  Mr. Fazekas suggested that the videotapes ordered by the defendant depicting minors engaged in sexual acts and bondage were not motivated by any sexual interest in pre-school or school aged children, but instead was [sic] a response by the defendant to *seek "some emotional response"* to his own childhood sexual abuse.

85.   Mr. Fazekas did find that the defendant "*is struggling with some sexual compulsivity issues." His findings suggest an individual who is "trying to have unmet emotional needs filled through"* pornography.  Mr. Fazekas explained that individuals with an addiction to internet pornography progress from "*soft-core*" adult pornography to "*more unconventional pictures,*" into the " ' *forbidden.'  These individuals are generally helpless to stop on their own accord and normally only do so when the secret life they live in is brought to light.  Their behavior generally only stops because either they are discovered and confronted or the time they spend in their pursuit becomes so great they begin to ignore personal and work obligations.*"  Mr. Fazekas related there are no known validated risk instruments that can be used in the case of an individual who has ordered a pornographic video of a child.  "*Likewise, the Abel Assessment probability values are not valid in this instance as Mr. Prisel's situation deals strictly with child pornography.*"  Mr. Fazekas distinguishes child abusers versus child pornography possessors.  He also notes, "*We do know however, that sexual interest in children is a risk factor associated with higher recidivism.  In Mr.*

*Prisel's case, there is no objective measured sexual interest in pre-school and/or school aged children.*"

86.  Mr. Fazekas made the following recommendations:  engage in counseling with an individual knowledgeable about sexually compulsive behaviors and pornography addiction.  Explore etiology of problematic sexual behavior.  Learn healthier ways to cope.  Place computer in a public area of the house.  Install internet tracking software by third party.  Computer should be subjected to random searches by qualified professionals to monitor use.

* * *

91.  On October 1, 2006, Dean Fazekas, MSSA, LISW, sent a second letter to defense, which was provided to this officer by defense counsel on October 24, 2006.  Mr. Fazekas met with the defendant, at the defendant's request for the purpose of sharing information he had not shared at the initial appointment.  At that second appointment, the defendant admitted his own childhood sexual abuse.  "*These events appeared to have been limited to a specific period of time.  While this information is significant, it is not so in the way one might initially think.  There is a myth that individuals who have been sexually abused will become sex offenders.  Research has shown us that he* [sic the] *opposite is more accurate.  While many sexual offenders have been sexually abused, the majority of people who are sexually abused do not become sex offenders.  In fact, when we look at risk factors, sexual abuse as a child is a protective factor, i.e., it lowers one's recidivism risk.*"
[Joint Appendix (J.A.) 82-84 (PSR at 13-15, emphasis in PSR).]

By order entered on October 16, 2007, this court granted Prisel's motion to stay proceedings pending the Supreme Court's decision in *Gall v. United States*, 128 S. Ct. 586 (2007).  After the Supreme Court decided *Gall* in December 2007, the parties filed supplemental briefs.  Later, the government cited supplemental authority in a letter filed under Fed. R. App. P. 28(j), noting that the Supreme Court granted certiorari and vacated the judgments in three of the cases the government's proof brief relied on, and that *Gall* had called into question two other cases the government had cited for the proposition that when the district court grants a large departure or variance from the Guidelines, there must be extraordinary or compelling circumstances justifying such a large departure.

## II. ANALYSIS

Under *Gall*, appellate courts "must review all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse of discretion standard." 128 S. Ct. at 591. "[T]he Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Id.* at 594. The *Gall* Court explained:

> In *Booker* [*United States v. Booker*, 543 U.S. 220 (2005),] we invalidated both the statutory provision, 18 U.S.C. §3553(b)(1) (2000 ed., Supp. IV), which made the Sentencing Guidelines mandatory, and § 3742(e) (2000 ed. and Supp. IV), which directed appellate courts to apply a *de novo* standard of review to departures from the Guidelines. As a result of our decision, the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." Our explanation of "reasonableness" review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions. See 543 U.S., at 260-262, 125 S. Ct. 738; see also *Rita* [*v. United States*], 551 U.S., at —, 127 S. Ct. 2456 (STEVENS, J., concurring).
>
> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. *Id.* at —, 127 S. Ct. 2456.
>
> In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.
>
> * * *
>
> As we explained in *Rita*, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U.S., at —, 127 S. Ct. 2456. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the

sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. See *id.,* at —, 127 S. Ct. 2456. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id.,* at —, 127 S. Ct. 2456.

\* \* \*

Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. *Id.,* at —, 127 S. Ct. 2456. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court. [*Gall*, 128 S. Ct. at 594-598 (footnotes omitted).]

The government's first argument is that the district court abused its discretion by failing to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, adding that the district court articulated no reasoned explanation to differentiate Prisel from any other defendant who was indicted for possessing more than 1,000 child pornography images, including images of children in bondage. The government does not make clear whether it is asserting procedural or substantive error, or both, under *Gall, supra*. We

conclude that regardless of whether the asserted error is properly characterized as procedural or substantive, or both, the argument fails.

First, although the government cited no comparable case at sentencing, Prisel's counsel pointed out a case from the same federal district, involving the same offense, and a sentence that included house arrest. Second, the district court's closing remarks at sentencing further evidence that it did consider the need to avoid unwarranted sentence disparities. Third, we do not agree with the government that "the district court articulated no reasoned explanation to differentiate Prisel from any other defendant who was indicted for possessing more than 1,000 child pornography images . . ." At sentencing, the district court heard Prisel's counsel argue:

> Now, therefore, as to Section A of 3553(a)(2)(1), the seriousness of the offense, the Court has to do what it can to promote respect for the law and provide for just punishment. I would like the Court to consider the community standard. I would like the Court to consider this a first offense. I would like the Court to consider that Mr. Prisel waited until July of 2006 to even be charged with this crime . . . .

> As far as an adequate deterrence, Your Honor, he has been under apprehension [sic] for the last four years, and he has behaved himself. I don't think, according to Dr. Fazekas, he is any danger to the community. It has been indicated clearly that he is not a danger of acting on these, so it would affect people in the community.

After hearing this argument, the district court noted that Prisel has no prior record, that Fazekas opined that Prisel is not a danger to the community and presents little risk of recidivism for future behavior with children, and is seeking to make himself a better person. The district court included in its "Reasons for Departure" Prisel's age (44 at sentencing), his mental and emotional condition (as summarized in the PSR ¶¶ 80-86 and 91, quoted *supra*), and his family ties and responsibilities (PSR states Prisel works out of the home, his wife is a dependent, and they owe $70,000 on mortgage). The court noted that it believed that Prisel is a one-time offender, and that he is unlike many of the other defendants in similar cases the court had seen, in that he would not benefit from incarceration.

In the instant case, as in *Gall,* the district court correctly calculated and reviewed the Guidelines range. The government did not cite at sentencing a case involving a comparable defendant who received a more severe sentence. The government cites one case in its supplemental appellate brief (filed post-*Gall*), *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008), which held that a probationary sentence in a child pornography case was unreasonable and that the district court abused its discretion in imposing it. However, the facts in *Pugh* are distinguishable from the instant case.

In this case, Prisel was charged with one count, while Pugh was charged with three counts: receipt *and distribution* of pornography by computer under 18 U.S.C. § 2252(a)(2) and (b)(1); possession of child pornography received by computer under 18 U.S.C. § 2252(a)(5)(B) and §2256(8)(A); and receipt of obscene matter by interactive computer service under 18 U.S.C. § 1462. 515 F.3d at 1184. Pugh's advisory Guidelines range was 97 to 120 months' imprisonment, while Prisel's was 27 to 33 months' imprisonment. The district court imposed a non-custodial sentence on Pugh: a five-year probationary term with the conditions that Pugh continue mental health treatment; not possess a computer with internet access; consent to periodic, unannounced examinations of any computer he possessed; submit to searches based on reasonable suspicion; and register with the state sex-offender registry. In contrast, the district court in the instant case sentenced Prisel to one day in custody, and three years of supervised release beginning with 18 months of home confinement, and imposed additional conditions of supervised release and supervision, and ordered him to pay a fine of $6,000.[1]

---

[1]At oral argument before this panel, the government relied on an unpublished case, *United States v. Camiscione*, 207 Fed. Appx. 631 (2006). *Camiscione* was decided pre-*Gall* and, like *Pugh*, *supra*, is distinguishable.

The defendant's Guidelines range in *Camiscione* was the same as Prisel's–27 to 33 months.

For these reasons, we find no merit in the government's argument that the district judge failed to consider the need-to-avoid-unwarranted-sentencing-disparities sentencing factor.

The government's second and final argument is that the district court's sentence did not reflect the seriousness of the offense [§ 3553(a)(2)(A)], and did not afford adequate deterrence to criminal conduct [§ 3553(a)(2)(B)].

The government does not point to any deficiencies in the district court's procedural review. Rather, the government takes issue with several of the reasons underlying the district court's conclusion that Prisel's is "a very unusual case indeed." First, it contends that the court found that Prisel had voluntarily sought counseling, when the PSR indicated otherwise. Because the government did not raise this specific challenge in the district court, this court's review is for plain error that affected substantial rights. Fed. R. Crim. Pro. 51(b), 52(b), *see also Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). The record does not support that plain error occurred.

The PSR does, indeed, state:

80. The defendant denies having ever been treated by a psychologist, psychiatrist, or counselor for any rea

81. Per instruction of counsel, the defendant was seen by Dean Fazekas, MSSA, LISW, of Specialized Assessments and Treatment, LLC for the purpose of a psychological evaluation. . . . [J.A. 82 (PSR at 13).]

---

The district court sentenced Camiscione to one day in the marshal's custody, followed by 3 years of supervised release, with 180 hours of community service. Contrary to the government's suggestion, however, this court in *Camiscione* noted that the district court's "variance is not impermissible," and vacated the sentence because "the district court's failure to address several pertinent factors does not allow us to determine that Camiscione's sentence was justified." 207 Fed. Appx. at 636. This court concluded that the district court "neglected to consider and articulate how its sentence . . . deterred Camiscione from further crimes, and how this sentence avoided sentencing disparities. . . If these factors were in fact considered by the district court, the record is devoid of such reasoning." *Id.* at 637. We also note that Camiscione's sentence, unlike Prisel's, did not include 18 months of house arrest, nor did it include a fine.

However, the PSR also states that Fazekas "met with the defendant, at the defendant's request for the purpose of sharing information he had not shared at the initial appointment." J.A. 84 ¶ 91 (PSR at 15). "The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object." *United States v. Levy*, 250 F.3d. 1015, 1018 (6th Cir. 2001), citing *United States v. Ward*, 190 F.3d 483, 492 (6th Cir. 1999). Given ¶ 91, it cannot be said that the district court clearly erred in finding that defendant "voluntarily sought counseling." In any event, there is no indication that the district court's reliance on Fazekas' assessment of Prisel hinged on whether Prisel first saw Fazekas per instruction of counsel, or on his own. Nonetheless, we agree with the government that defense counsel argued at sentencing that Prisel had voluntarily sought counseling, and that the PSR appears to contradict that assertion. However, the record can also be interpreted as supporting that Prisel first saw Fazekas for an evaluation per instruction of counsel, and saw Fazekas subsequently of his own accord, or that the desire to seek treatment was Prisel's, and per defense counsel's instruction he underwent evaluation by Fazekas specifically, as opposed to another therapist. Thus, we find no plain error.

Second, the government asserts that Fazekas administered a test that required Prisel to self-report his sexual arousal to various images, and that the PSR acknowledges that "there are no known validated risk instruments that can be used in the case of an individual who has ordered a pornographic video of a child, thereby rendering the risk probability values invalid in Prisel's case." The government is correct that the PSR so states, however, it is clear from the PSR that Fazekas concluded *notwithstanding the shortcomings of the testing,* that Prisel was unlikely to act out with children because his addiction to pornography was an attempt to have unmet emotional needs of his filled. The PSR noted that Fazekas suggested that Prisel's ordering of the videotapes depicting

minors engaged in sexual acts and bondage was not motivated by any sexual interest in pre-school or school-aged children, but instead was a response by Prisel to seek some emotional response to his own childhood sexual abuse. Fazekas opined that Prisel's having been sexually abused himself [by an older brother] did not mean that he presented a higher risk of becoming a sex offender, but rather, that "research has shown that . . .while many sexual offenders have been sexually abused, the majority of people who are sexually abused do not become sex offenders." J.A. 84 (PSR at 15).

For these reasons, we find no merit in the government's argument that the district judge gave improper weight to the sentencing factors of the need for the sentence imposed 1) to reflect the seriousness of the offense and 2) to afford adequate deterrence to criminal conduct.

As in *Gall,* the district judge in the instant case correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered the § 3553(a) factors, and thoroughly documented her reasoning. *See Gall*, 128 S. Ct. at 598. The sentencing transcript and the court's written judgment belie the government's arguments that the district judge failed to consider the need to avoid unwarranted sentence disparities, and did not give proper weight to the seriousness of the offense and the need to afford adequate deterrence to criminal conduct. The district court's written judgment and its statements at the sentencing hearing adequately addressed these issues and set forth the reasons for its below-the-advisory Guidelines-range sentence.

*Gall* instructs: "[a]ssuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall,* 128 S. Ct. at 597. Taking into account the totality of the

circumstances, discussed above, we conclude that the district court did not abuse its discretion in departing downward 27 months from the advisory Guidelines range.  We **AFFIRM**.