UNITED STATES of America,

v.

Christopher E. PELLOSKI.

Case No. 2:13–cr–230.

United States District Court,
S.D. Ohio,
Eastern Division.

Signed July 21, 2014.

Heather A. Hill, United States Attorney's Office, Columbus, OH, for United States of America.

Stephen Ernest Palmer, Yavitch & Palmer Co., LPA, David H. Thomas, R. William Meeks, Meeks & Thomas Co, LPA, Columbus, OH, for Christopher E. Pelloski.

## OPINION AND ORDER

JAMES L. GRAHAM, District Judge.

This matter is before the Court for the sentencing of the Defendant, Christopher E. Pelloski. On July 11, 2014, the Court sentenced the Defendant to 12 months and one day imprisonment, a $10,000 fine, and a term of five years of supervised release for knowingly accessing with intent to view digital files that contained child pornography in violation of 18 U.S.C. § 2252(a)(5)(B). This Opinion and Order explains the basis for the Court's sentence.

This case highlights a growing social phenomenon that Internet technology has given birth to and which is an increasingly troublesome phenomenon in our society. As a result of federal laws punishing the possession of child pornography, federal courts have become increasingly involved in sentencing child pornography offenders. As the Court has previously noted:

> Child pornography possession cases on the docket of a United States district judge will include men of all ages ranging from late adolescence to old age. They will include students, teachers, administrators, physicians, lawyers, executives, church leaders, and others from all walks of life. Most lead otherwise normal and productive lives. They are good husbands, good fathers, good employees, good students, good friends. Few if any have prior criminal records. When they are caught, the consequences are enormous. Reputations are shattered, careers are ended, and families are destroyed. Suicides are not uncommon. The human costs are staggering, certainly equal to those in the most serious cases of drug addiction and in a population that is usually otherwise healthy.

Hon. James L. Graham, *The Sixth Circuit Broke New Ground in Post–Booker Guideline Sentencing with a Pair of Important Decisions,* 26 Fed. Sent. R. 102, 112 (December 2013) (hereinafter *"Bistline Article"*).

■ In sentencing child pornography offenders, the Court focuses on the characteristics of each offender based on the sentencing factors outlined in 18 U.S.C. § 3553(a). Defendants convicted of the production of child pornography are the most culpable of the child pornography offenders sentenced by the Court. They are, without question, deserving of lengthy sentences of imprisonment given the direct and lasting harm they inflict upon children. In the tier below producers of child pornography are those defendants who distribute images of child pornography. These defendants create the potential for continued viewing of horrible images of child pornography throughout a child's lifetime. Because these defendants introduce these images, into circulation, they bear a large share of culpability and should be punished accordingly.

Most individuals before the Court, however, are charged with the possession and viewing of child pornography. These individuals use the images of child pornography for sexual stimulation. But in the vast majority of these cases, there is no indication that the offenders have or will ever commit a contact offense with a child. The Defendant in this case is a distinguished physician who devoted his life and career to the research and treatment of pediatric cancer. It is a tragic irony of this case that the Defendant engaged in the downloading and viewing of child pornography. In so doing, he harmed the same group he had dedicated his career to helping.

## I. Background

In October 2012, the Franklin County Internet Crimes Against Children Task Force (the Task Force) conducted an online investigation to detect child pornography offenses. PSR at ¶ 9–10. Through their investigation, members of the Task Force determined that the Defendant was using peer-to-peer sharing programs to download child pornography. *Id.* at ¶ 10. From March 29 through July 8, 2013, the Defendant possessed 59 files containing child pornography. *Id.* at ¶ 11.

Law enforcement agents executed a search warrant at the Defendant's residence on July 16, 2013, and seized numerous computer and digital media storage devices from his residence. *Id.* at ¶ 13.

At the time of the search, the Defendant was not at home. *Id.* Law enforcement agents contacted the Defendant by telephone at which time he admitted to using file sharing programs to download pornography. *Id.* at ¶ 15. The Defendant admitted that he had searched for and viewed images of minors that were sexual in nature. *Id.* A forensic analysis of the Defendant's computers revealed multiple images of child pornography and files indicating past viewing of child pornography. PSR at ¶ 16.

On July 24, 2013, the Government filed a single-count Complaint (doc. 1) charging the Defendant with receiving visual depictions of minors engaged in explicit sexual activity via the Internet in violation of 18 U.S.C. § 2252. On September 25, the Defendant underwent a Computer Voice Stress Analysis, a form of polygraph testing, at the request of the Government. PSR at ¶ 17. The Defendant denied ever sexually abusing children. *Id.* Two different examiners assessed the results of that test and concluded that the Defendant's denial was truthful. *Id.*

On October 4, the Government filed a single-count Information (doc. 16) charging the Defendant with knowingly accessing with intent to view digital files that contained child pornography in violation of 18 U.S.C. § 2252(a)(5)(B). That same day, the Defendant entered into a plea agreement (doc. 17) with the Government in which he agreed to plead guilty to the sole count charged in the information.

## II. The Defendant's Guideline Range

Pursuant to U.S.S.G. § 2G2.2, the base offense level for 18 U.S.C. § 2252(a)(5)(B) is 18. The specific offense characteristics include: (1) material involving a prepubescent minor or a minor who has not attained the age of 12, which requires a two level increase pursuant to U.S.S.G. § 2G2.2(b)(2); (2) material that portrays sadistic or masochistic conduct or other depictions of violence, which requires a four level increase pursuant to U.S.S.G. § 2G2.2(b)(4); (3) the use of a computer for the possession and receipt of the material, which requires a two level increase pursuant to U.S.S.G. § 2G2.2(b)(6); and (4) between 10 and 150 images, which requires a two level increase pursuant to U.S.S.G. § 2G2.2(b)(7)(A). The Defendant's adjusted offense level is therefore 28. In light of the Defendant's acceptance of responsibility, he is entitled to a three level reduction to his adjusted offense level for a total offense level of 25. With no criminal history to speak of, the Defendant's criminal history score is zero, placing him in criminal history category I. The Defendant's guideline imprisonment range is therefore 57 to 71 months. The Probation Office recommended a below guidelines sentence of 48 months imprisonment and five years of supervised release. At the sentencing hearing, the Government recommended a sentence between 18 and 48 months. (Sentencing Tr. at 25).

## III. Discussion

The Court's concerns regarding the child pornography sentencing guidelines are well-documented. *See generally United States v. Childs,* 976 F.Supp.2d 981 (S.D.Ohio 2013); *Bistline Article,* 26 Fed. Sent. R. 102. "There is widespread agreement among judges, lawyers and legal scholars that the guidelines for child pornography offenses are seriously flawed." *Childs,* 976 F.Supp.2d at 982. Indeed, the belief that the child pornography sentencing guidelines are flawed is shared by the Sentencing Commission and the United States Department of Justice. *See* United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses,* at ii (Dec.2012), www.ussc.gov/

Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/ Sex_Offense_Topics/201212_Federal_ Child_Pornography_Offenses/ (last visited July 2, 2014) (hereinafter "Child Pornography Report") ("as a result of recent changes in the computer and Internet technology that typical non-production offenders use, the existing sentence scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability"); Letter from Anne Gannon, Nat'l Coordinator for Child Exploitation Prevention and Interdiction, Office of the Deputy Attorney General, U.S. Dep't of Justice, to Honorable Patti B. Saris, Chair, U.S. Sentencing Comm'n, at 1 (Mar. 5, 2013), available at http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf (last visited July 2, 2014) ("the Department agrees with the Commission's conclusion that advancement in technology and the evolution of the child pornography "Market" have led to a significantly changed landscape— one that is no longer adequately represented by the existing sentencing guidelines") (hereinafter "DOJ Letter").

A. *Booker, Kimbrough, and the Sixth Circuit's Decisions in Bistline I and Bistline II*

■ In the Court's view, *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and its progeny support the conclusion that the child pornography sentencing guidelines are entitled to limited deference. In *Booker*, the Supreme Court held the Sentencing Reform Act of 1984's mandatory guidelines unconstitutional, rendering the guidelines "effectively advisory." 543 U.S. at 245, 125 S.Ct. 738. The *Booker* Court's holding "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well," such as the individual characteristics of the defendant or the circumstances of the offense. *Id.* (internal citations omitted). To promote the goals of "honesty, uniformity, and proportionality in sentencing," the *Booker* Court recognized that the Sentencing Commission would remain in place, "writing Guidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly." *Id.* at 264, 125 S.Ct. 738 (citation omitted).

Post-*Booker*, the Supreme Court repeatedly emphasized the importance of the Sentencing Commission in formulating the sentencing guidelines in light of its institutional expertise and its focus on empirical analysis:

> While rendering the sentencing guidelines advisory ... we have nevertheless preserved a key role for the Sentencing Commission.... Congress established the Commission to formulate and constantly refine national sentencing standards.... Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.

*Kimbrough v. United States*, 552 U.S. 85, 108–09, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (internal quotations and citations omitted). *See also Rita v. United States*, 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) ("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill this statutory mandate. They also reflect the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of

punishment."). In *Kimbrough*, the Court recognized a district court's authority to vary from the sentencing guidelines solely on policy grounds. 552 U.S. at 108–110, 128 S.Ct. 558. In so holding, the Court noted that the crack cocaine guidelines at issue in *Kimbrough* "d[id] not exemplify the Commission's exercise of its characteristic institutional role" because the Commission "did not take account of 'empirical data and national experience'" when formulating them. *Id.* at 109–10, 128 S.Ct. 558 (internal citations omitted). Thus, the district court did not abuse its discretion in imposing a below-guidelines sentence despite it being a "mine-run case." *Id.* at 110–11, 128 S.Ct. 558.

Although *Kimbrough* concerned the crack cocaine guidelines, numerous courts have applied its rationale to reject the guidelines for a variety of offenses on policy grounds. *See* United States Sentencing Commission, *Report on the Continuing Impact of United States v. Booker on Federal Sentencing*, 37–43 (Dec.2012), available at http://www.ussc.gov/sites/default/files/pdf/news/congressional–testimony–and–reports/booker–reports/2012–booker/Part_A.pdf. (last visited July 2, 2014). Indeed, many courts have rejected the child pornography guidelines on policy grounds relying on *Kimbrough*. *Id.* As with the crack cocaine guidelines at issue in *Kimbrough*, "the Commission did not use [an] empirical approach when formulating the Guidelines for child pornography," *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir.2010), and the Commission itself has reported that the child pornography guidelines produce disproportionately severe sentences in light of the purposes of sentencing set forth in § 3553(a), United States Sentencing Commission, *Child Pornography Report*, at xviii. Contrary to its historical institutional role and empirical practices, "at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties." *Dorvee*, 616 F.3d at 184 (citation omitted).

■ Despite the parallels to the crack cocaine guidelines at issue in *Kimbrough*, the circuit courts are split as to whether judges may depart from the child pornography guidelines based on a policy disagreement. In *United States v. Bistline*, the Sixth Circuit Court of Appeals held that district courts are required to give compelling deference to the congressionally-mandated child pornography guidelines. 665 F.3d 758 (6th Cir.2012) (hereinafter, *Bistline I*); 720 F.3d 631 (6th Cir.2013) (hereinafter, *Bistline II*). Given that "defining crimes and fixing penalties are legislative ... functions," *Bistline I*, 665 F.3d at 761, and that Congress delegated to the Commission only "a limited measure of its power to set sentencing policy," *id.* at 762, the *Bistline I* court concluded that "a district court cannot reasonably reject § 2G2.2—or any other guidelines provision—merely on the ground that Congress exercised, rather than delegated, its power to set the policies reflected therein," *id.* Subjecting the district court's sentencing decision to "close scrutiny," the Sixth Circuit found that the defendant's sentence of one day in prison combined with significant terms of home confinement and supervised release was substantively unreasonable. *Bistline I*, 665 F.3d at 764–68; *Bistline II*, 720 F.3d at 633–34.

The Fifth and Eleventh Circuits have joined the Sixth Circuit in holding that district courts are limited in their authority to reject the child pornography guidelines on policy grounds. *See United States v. Miller*, 665 F.3d 114, 120–21 (5th Cir. 2011) (2012) ("we will not reject a Guidelines provision as 'unreasonable' or 'irrational' simply because it is not based on

empirical data and even if it leads to some disparities in sentencing"); *United States v. Pugh,* 515 F.3d 1179, 1201 n. 15 (11th Cir.2008) (recognizing that *Kimbrough* authorizes district court to deviate from the Guidelines based on policy reasons but holding that the child pornography guidelines "do not exhibit the deficiencies the Supreme Court identified in *Kimbrough* "). Conversely, the Second, Third, and Ninth Circuits have approved of below guidelines sentences for child pornography offenders based on a district court's policy disagreement with § 2G2.2. *See United States v. Henderson,* 649 F.3d 955, 963 (9th Cir. 2011) ("similar to the crack cocaine Guidelines, district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case"); *Dorvee,* 616 F.3d at 184 (holding that district courts may vary from the child pornography guidelines based solely on a policy disagreement with § 2G2.2); *United States v. Grober,* 624 F.3d 592, 602–10 (3d Cir.2010) (citing *Dorvee* and affirming the district court's categorical rejection of child pornography guidelines on policy grounds); *see also United States v. Stone,* 575 F.3d 83 (1st Cir.2009) (implying that district court could have categorically rejected § 2G2.2 and stating in dicta "[w]ere we collectively sitting as the district court, we would have used our *Kimbrough* power to impose a somewhat lower sentence").[1]

Although correlation does not imply causation, it is worth noting the disparity in average sentences for nonproduction child pornography offenders between circuits that permit categorical rejection of the child pornography guidelines on policy grounds (the Pro–Rejection circuits) and those circuits that do not (the Anti–Rejection circuits). The mean sentence in the Pro–Rejection circuits for a nonproduction child pornography offense was 75.53 months imprisonment. Hamilton, *Sentencing Adjudication* at 450. In contrast, the mean sentence in the Anti–Rejection circuits was 109.51 months, an increase of almost three years. *Id.* Despite numerous opportunities to do so,[2] the Supreme Court has yet to address this circuit split. Such a ruling would clarify the scope of *Kimbrough* and potentially ameliorate sentencing disparities between the circuits. Absent further guidance from the Supreme Court, this Court is precluded by *Bistline I* and *Bistline II* from sentencing the Defendant to a below guidelines sentence based on a policy disagreement with the child pornography guidelines. The Court recognizes that it is bound by the Sixth Circuit's decision in *Bistline.*

**B. *18 U.S.C. § 3553(a)***

 In imposing a sentence, a district court is obligated to consider the factors set forth in 18 U.S.C. § 3553(a). After considering these factors, a district court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: just punish-

1. The Seventh, Eighth, and Tenth Circuits appear to recognize district courts' broad authority to reject guidelines on policy grounds under *Kimbrough* while remaining skeptical of district courts that reject § 2G2.2 for policy reasons. *See* Melissa Hamilton, *Sentencing Adjudication: Lessons from Child Pornography Nullification,* 30 Ga. St. U.L.Rev. 375, 428–432 (2014) (hereinafter "Hamilton, *Sentencing Adjudication* ").

2. *Bistline v. United States,* —— U.S. ——, 134 S.Ct. 1514, 188 L.Ed.2d 463 (2014) (denying certiorari); *Bistline v. United States,* —— U.S. ——, 133 S.Ct. 423, 184 L.Ed.2d 288 (2012) (same); *Miller v. United States,* —— U.S. ——, 132 S.Ct. 2773, 183 L.Ed.2d 643 (2012) (same).

ment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson v. United States,* 555 U.S. 350, 352, 129 S.Ct. 890, 172 L.Ed.2d 719 (2009); *Rita v. United States,* 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).

### 1. Nature and Circumstances of the Offense

■ There is no disputing that "child pornography is ... a serious crime," *United States v. Robinson,* 669 F.3d 767, 776 (6th Cir.2012), because "[it] harms and debases the most defenseless of our citizens," *United States v. Williams,* 553 U.S. 285, 307, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Child pornography offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children." United States Sentencing Commission, *Child Pornography Report,* at vi. In the instant case, the Defendant downloaded and viewed a number of images of child pornography on his personal and work computers. PSR at ¶¶ 9–16. The images depicted the sexual exploitation of minors, including prepubescent children, and also portrayed sadistic or masochistic conduct. *Id.* at ¶¶ 24–27.

Based on the Court's experience in sentencing defendants for nonproduction child pornography offenses, the nature and circumstances of the Defendant's offense here are, sadly, routine. The Court evaluates the seriousness of the Defendant's conduct in light of the Sentencing Commission's conclusion that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior." United States Sentencing Commission, *Child Pornography Report,* at 321. Signif-

icantly, the Department of Justice agrees with the Sentencing Commission's general conclusion:

> [T]he Department agrees with the Commission's conclusion that advancements in technologies and the evolution of the child pornography "market" have led to a significantly changed landscape—one that is no longer adequately represented by the existing sentencing guidelines. Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness. The current guidelines can at times under-represent and at times over-represent the seriousness of an offender's conduct and the danger an offender possesses.

*DOJ Letter* at 1.

In 2010, in cases in which U.S.S.G. § 2G2.2 enhancements were applicable, the enhancements for possessing materials depicting prepubescent minors (§ 2G2.2(b)(2)), use of a computer (§ 2G2.2(b)(6)), and number of images (§ 2G2.2(b)(7)) applied in over 95% of cases. United States Sentencing Commission, *Child Pornography Report* at 209. The enhancement for possession of material portraying violence or sadomasochistic conduct (§ 2G2.2(b)(4)) applied in 74% of all § 2G2.2 cases. *Id.* These four enhancements apply to the Defendant's conduct in this case and do not accurately depict the severity of the Defendant's offense.

Innovations in digital cameras and videography as well as in computers and Internet-related technology, such as peer-to-peer ("P2P") file-sharing programs, have been used by offenders in the production, mass distribution (both commercial and non-commercial distribution), and acquisition of child pornog-

raphy. These technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre that previously was not as widely circulated as it is today. As a result of such changes, entry-level offenders now easily can acquire and distribute large quantities of child pornography at little or no financial cost and often in an anonymous, indiscriminate manner.

Several provisions in the current sentencing guidelines for non-production offenses—in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images—originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

*Id.* at 312–313.

In evaluating the seriousness of the Defendant's offense, the Court looks to the factors recommended by the DOJ itself, including:

how an offender obtains child pornography; the volume and type of child pornography an offender collects; how long an offender has been collecting child pornography; the attention and care an offender gives to his collection; how an offenders uses his collection once obtained; how an offender protects himself and his collection from detection; and whether an offender creates, facilitates, or participates in a community centered on child exploitation.

*DOJ Letter* at 2. Here, the Defendant collected child pornography through the use of a peer-to-peer sharing network. Although he began viewing child pornography as early as 2007, there is no suggestion that the Defendant paid money to obtain these images or that he was a member of an online community centered on child exploitation. The Defendant did not protect his collection from detection. When confronted by law enforcement agents, the Defendant admitted responsibility for downloading and viewing the images of child pornography on his computers. The size of the Defendant's collection, 59 images, is unremarkable in light of the fact that 67.6% of cases involving § 2G2.2 enhancements involve 600 or more images. United States Sentencing Commission, *Child Pornography Report* at 209. Further, the type of images at issue in this case is, like the case as a whole, sadly routine.

In summary, while the offense in question is serious, the enhancements applied to the Defendant in this case yield a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

### 2. History and Characteristics of the Defendant

■ Prior to his arrest in this case, the Defendant was a productive member of the community with no criminal history. From January 1, 2010 to July 24, 2013, the Defendant was a highly successful physician at the Ohio State University Medical Center. PSR at ¶ 76. During this time, the Defendant worked as a full-time clinician, an associate professor in radiation oncology at the James Cancer Hospital, and the Residency Program Director for the OSU Medical Center. *Id.* Before his employment with the OSU Medical Center,

the Defendant worked as a resident and then full-time assistant professor at the M.D. Anderson Cancer Center in Houston, Texas from 2001 to 2009. *Id.*

Although successful in his academic and professional endeavors, the Defendant experienced a turbulent, and, at times, traumatic childhood. Throughout his childhood, the Defendant's father emotionally abused him. *Id.* at ¶ 38. The Defendant also reported being sexually abused on three separate instances as a child. *Id.* First, when he was three or four years, an adult in the home fondled the Defendant. *Id.* Several years later, when he was six, after swimming at a neighbor's pool, the neighbor sexually assaulted the Defendant while he was changing. *Id.* A year later, the Defendant's paternal aunt fondled him and tried to force him to kiss her. *Id.* The Defendant attempted to inform his grandparents of the molestation, but their response was unsupportive and they reprimanded the Defendant for "talk[ing] dirty." *Id.*

Throughout his adult life, the Defendant received intermittent mental health counseling. PSR at ¶¶ 51–53. In 1997, the Defendant was diagnosed with Attention Deficit Disorder and Generalized Anxiety Disorder in 1997. *Id.* at ¶ 51. Following his arrest, the Defendant began to attend outpatient mental health therapy with Michelle Risser. *Id.* at ¶ 54. Risser summarized her treatment of the Defendant, noting that he presented with symptoms of depression and alcohol abuse. *Id.* She assessed the Defendant for Post–Traumatic Stress Disorder (PTSD) and sexual abuse issues. *Id.* The Defendant's PTSD symptoms included traumatic memories, flashbacks and dissociative symptoms resulting from his childhood sexual abuse. *Id.* Based on the Defendant's description of symptoms, Risser treated him for PTSD with dissociative symptoms and alcohol use

disorder, early full remission. *Id.* Risser reported that she is working with the Defendant to address the link between his traumatic memories and the viewing of child pornography as a way to make sense of intrusive mental images of his own abuse. *Id.* at ¶ 55. The Defendant has attended sessions on a weekly basis and fully complied with Risser's treatment program. *Id.* at ¶ 54.

On November 14, 2013, the Defendant underwent a psychological evaluation with Dr. David Tennenbaum. *Id.* at ¶ 56. Tennenbaum interviewed the Defendant and his wife, tested the Defendant, and reviewed Risser's reports. *Id.* In his interview, the Defendant reported that he began to use peer-to-peer programs to download pornography more than ten years ago. *Id.* at ¶ 59. In 2005, he reported downloading child pornography "accidentally." *Id.* As he began to search for and view images of child pornography, he remembered his past molestation as a child. *Id.* Psychological testing indicated that the Defendant suffered from PTSD, generalized anxiety disorder, and alcohol abuse. *Id.* at ¶¶ 60–62. Tennenbaum concluded that there was no indication that the Defendant attempted, or considered attempting, a contact offense, and therefore he was at the "lowest level of risk." PSR at ¶ 63. In conclusion, Tennenbaum recommended that the Defendant continue treatment with Risser and to continue his regimen of psychiatric medications. *Id.*

In the Court's view, the Defendant's childhood experiences as a victim of sexual abuse act as a significant mitigating factor in this case. *See United States v. Janosko,* 355 Fed.Appx. 892, 894 (6th Cir.2009) (treating defendant's sexual abuse as a child as a mitigating factor when sentencing child pornography offender); *United States v. Prisel,* 316 Fed.Appx. 377, 382 (6th Cir.2008) (same); *United States v.*

*Grober,* 595 F.Supp.2d 382, 410 (D.N.J. 2008) (same); *United States v. Hanson,* 561 F.Supp.2d 1004, 1007 (E.D.Wis.2008) (same). The Defendant's lack of criminal history also weighs in favor of a lesser sentence of incarceration. *See United States v. Qualls,* 373 F.Supp.2d 873 (E.D.Wis.2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). Further, the Defendant's age, education, minimal criminal history, and acceptance of responsibility are indicative of a low-risk offender, amenable to rehabilitation. Melissa Hamilton, *The Child Pornography Crusade and Its Net–Widening Effect,* 33 Cardozo L.Rev. 1679, 1726 (2012). Finally, the Court considers the Defendant's struggles with PTSD resulting from his childhood sexual abuse to be an additional mitigating factor in his favor.

### 3. Deterrence and Protection of the Public from Future Crimes of the Defendant

 The Government submits that "a significant term of incarceration is a necessary and appropriate specific deterrence measure in this case." Govt.'s Sentencing Mem. at 6. In its view, a sentence of incarceration "will serve as an example to other potential offenders who may not appreciate the gravity of this conduct, and that the possibility of lengthy terms of incarceration will deter those individuals from committing similar offenses." *Id.* The Sixth Circuit has recognized that "[g]eneral deterrence is crucial in the child pornography context" because "the logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *United States v. Robinson,* 669 F.3d 767, 777 (6th Cir.2012) (internal citations and quotations omitted). "Affording adequate deterrence is also closely linked to reflecting the seriousness of the offense." *United States v. Rothwell,* 847 F.Supp.2d 1048, 1069 (E.D.Tenn.2012) (citing *Robinson,* 669 F.3d at 777). The Court considers the need for general deterrence in this case accordingly.

In this case, the Court finds the need for general deterrence more compelling than the need to protect the public from future crimes of the Defendant. On supervised release, the Defendant "will be at low risk of recidivating because of the restrictions on access to online material that the conditions of supervised release ... [will] impose." *United States v. Robinson,* 714 F.3d 466, 468 (7th Cir.2013). Moreover, following his conviction, the Defendant will be subject to the Sex Offender Registration and Notification Act, which will impose additional restrictions on the Defendant. 42 U.S.C. §§ 16901 et seq. Further, as the Court previously noted, the Defendant's individual characteristics indicate that he is a good candidate for rehabilitation, further reducing the likelihood of him committing future crimes. Polygraph testing confirmed that the Defendant has never abused children, PSR at ¶ 17, and additional psychological examination indicated that the Defendant was at the "lowest level of risk" for committing a contact offense, *id.* at ¶ 63.

### 4. Sentencing Disparities

 Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. *United States v. Greco,* 734 F.3d

441, 451 (6th Cir.2013). In 2012, less than 33% of child pornography offenders were sentenced to within-guideline sentences. United States Sentencing Commission, 2012 Sourcebook of Fed. Sentencing Statistics, Table 28 (2012), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2012/Table28.pdf (last visited July 2, 2014). In 2011, for nonproduction child pornography offenses, 28% of defendants received sentences of less than five year imprisonment, 5% of defendants received sentences of one year or less, and 2% of defendants received sentences of probation-only. Hamilton, *Sentencing Adjudication* at 447–48 (citing United States Sentencing Commission, *Commission Datafiles,* http://www.ussc.gov/research-and-publications/commission-datafiles). The Court sentences the Defendant with these statistics in mind.

C. *Sentence*

At sentencing, after calculating the Defendant's guideline range, the Court questioned the parties regarding what they believed would constitute a reasonable sentence in this case. (Sentencing Tr. at 25). The Government stated its belief "that a sentence between 18 and 48 months would be appropriate." (*Id.*). In response to the Court's enquiry, the Defendant asserted that a sentence of 12 months would be a reasonable punishment under the circumstances. (*Id.* at 25–26). The Court considered the parties' representations in fashioning its sentence in this case.

The Defendant's actions and their consequences in this case will deprive the community of a highly-gifted and renowned pediatric oncologist. In letters to the Court, the Defendant's colleagues have testified to his skill and expertise as a physician and scientist. Moreover, the Defendant's patients and colleagues described him as a caring and tireless advocate for children suffering from cancer. Undoubtedly, the Defendant's skills and expertise as a pediatric oncologist would be put to better use outside of prison. While his conviction will likely end his career as a practicing physician, the Defendant's medical research knowledge, and skill are of unique value to the community. The Court believes this is a unique mitigating factor which supports a sentence below the guideline range.

In determining the Defendant's sentence, the Court has weighed the relevant 3553(a) factors. A sentence of incarceration is consistent with Congress's retributive judgment that child pornography offenses are reprehensible. Further, a term of imprisonment will serve Congress's established interest in the general deterrence of child pornography offenses. Nonetheless, the Court will limit the Defendant's term of incarceration in light of the Defendant's lack of criminal history, childhood sexual abuse, struggles with PTSD and depression, his amenability to rehabilitation, and his potential contribution to society in the fight against childhood cancer. For the foregoing reasons, the Court finds that a sentence of 12 months and one day imprisonment, a $10,000 fine, and a term of five years of supervised release is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). The Court appreciates that the Defendant's sentence is a significant variance below his guideline range. The Government's recommendation that the Defendant serve a sentence as low as 18 months imprisonment supports the Court's conclusion that a variance of this magnitude is justified in this case.

Absent the restrictions of the Sixth Circuit's *Bistline* decisions, the Court would

find that a further downward variance would be appropriate in this case based upon the Court's policy disagreement with the child pornography guidelines. This Court's policy disagreement with the child pornography guidelines are based on the very same criticisms expressed by the sentencing commission as discussed in *Bistline*.

At sentencing, the Government requested the opportunity to file specific objections to the Court's written Opinion and Order. (Sentencing Tr. at 44–45). The Government's request is GRANTED. Either party may file objections within seven days of the Court's Opinion and Order being issued.

IT IS SO ORDERED.